HAMLIN, Justice
(dissenting).
I am compelled to dissent from the majority opinion.
Order No. 6993 of the Louisiana Public Service Commission, issued June 30, 1956, was involved in the case of Southern Bell Telephone and Telegraph Company v. Louisiana Public Service Commission, Decided February 25, 1957, Rehearing Denied April 1, 1957, reported in 232 La. 446, 94 So.2d 431.
In that matter, this Court, in an opinion of which I was the author, reversed the judgment of the trial court setting aside Order No. 6993 of the Louisiana Public *68 Service Commission issued June 30, 1956, and decreed Order No. 6993 to be in full force and effect.
Order No. 6993 reads in pertinent part:
“It Is, Therefore, Ordered:
“1. That Southern Bell Telephone and Telegraph Company shall reduce its annual gross intrastate operating revenues in the amount of $3,940,000.00.”
The Commission further ordered that this reduction should be accomplished in the following manner:
“Effective September 1, 1956 all public telephone pay station rates shall be reduced from ten cents (10^) to five cents (5‡) per local call.
“Effective August 1, 1956 all intrastate toll rates and charges shall be subject to a discount of 20 per cent per call.”
This directive was addressed only to Southern Bell and did not affect any independent connecting company, and it did not make any change in the rates of the independent companies, as it was the only telephone company made a party to the proceedings.
There is nothing in the order to indicate any intention on the part of the Commission to interfere with the reciprocal settlement agreements between the independent companies and Southern Bell.
In my opinion, the Commission’s order primarily concerned the amount of the reduction, $3,940,000, and the method was subordinate to the result to be accomplished.
On August 14, 1957, Southern Bell sought relief from the Commission. Meanwhile, on August 5, 1957, the Commission issued an order to Southern Bell to show cause why toll rates and charges on calls by customers of independent telephone companies, which are completed over Southern Bell facilities, should not also be reduced by twenty per cent and refunds made accordingly.
In answer to this order to show cause, Southern Bell, on October 11, 1957, showed the Commission that it makes no charges to the customers of independent telephone companies and collects no money from the customers of these companies. The independent companies interconnect their facilities with those of Southern Bell and with other companies in order to furnish a long distance service for their customers all over the United States and to enable their customers to receive calls from all over the United States. The settlement arrangements agreed upon by contract between the companies are related to the total traffic interchanged, without regard to the interstate or intrastate character of the traffic. Southern Bell does not receive payment on a per-call basis. This statement is explained by Southern Bell in Footnote 3 of its brief, reading as follows :
“The toll charges of all messages made each month by an independent company on calls where Southern Bell’s facilities are involved are totaled, and this total is divided by the aggregate number of all such calls to determine the average charge per call. This average is applied to a schedule attached to the contract to determine the part which the independent is to keep and the part which the independent is to pay to Southern Bell. No distinction is made between intrastate and interstate calls.”
Because of the complexes of the nationwide as well as state-wide flow of toll traffic, the payments to Southern Bell are computed under an agreed upon formula as a portion of the total revenue, interstate and intrastate, collected by the independent companies for toll service to their own subscribers.
Southern Bell further showed that in compliance with the Commission’s order, refunds and reductions of 20% per call were made on the .entire charge for intrastate toll calls of Southern Bell customers without regard to the fact that intercon *69 nection with the facilities of independent companies had been used in completing many of those calls. Also, Southern Bell showed that it had already made refunds which amount to substantially more on an annual basis than the $3,940,000.00, all of which appears to have been explained to the Commission on October 11, 1957.
Southern Bell further showed that if the Commission had intended that toll rates charged by the independent companies for calls over interconnected lines should be deemed joint rates and should have been affected by the reduction order, the Commission should have undertaken to establish joint rates in the manner prescribed by LSA-R.S. 45:1093-1096, which the Commission had not done.
It is my view that when the Commission directed Southern Bell to accomplish the $3,940,000 reduction by providing that “all intrastate toll rates and charges shall be subject to a discount of 20 per cent per call,” the Commission was directing Southern Bell — the only party to the proceeding — to discount its toll tariff rates and charges to its own customers by that per cent for each call.
The foregoing was my interpretation of the order at the time I authored the opinion involving Order No. 6993, and it is my interpretation today. I felt then and still feel that that is the clear and unmistakable meaning of that order and that it is not subject to any other reasonable interpretation. The independent companies were not parties to the reduction proceeding; the interconnection contracts were not mentioned in the reduction order; the subject of joint rates was not mentioned in the reduction order; and Southern Bell made refunds in accordance with its interpretation of the order.
All of this appears to have been explained on October 11, 1957, in answer to the rule to show cause, and no statement or assertion in evidence by Southern Bell was disputed in any way.
Thereafter, a second Southern Bell case, in which this Court, in effect, decreed that Southern Bell is entitled to a return of not less than 6% on the property rate base as revised by us, was decided January 11, 1960, Rehearing Denied March 21, 1960, 239 La. 175, 118 So.2d 372, 394. In a concurring opinion I set forth, with my reasons therefor, that the rate, as fixed in the decree, should be “not less than 6.25%.” I stated therein:
. “Inasmuch as the ascertainment of a fair return in a given case is a matter incapable of exact mathematical demonstration and is one of reasonable approximation, having its basis in a proper consideration of all relevant facts, I believe that a return of not less than 6.25% will strike the happy medium and will not be unreasonable, whether considered from the viewpoint of the subscriber, the investor, or the Company.”
In my concurring opinion, I also observed :
“ * * * it would appear to me that in the instant case a rate of return of not less than 6.25% on property rate base would be fair and reasonable at this time, to allow for the great necessity for an immediate expansion program in Louisiana, the reasons for which being set forth in the original opinion.” (Emphasis added.)
Another reason for my having been of the opinion that the rate should not be less than 6.25% in the last Southern Bell case, is that experts on both sides of a case of this nature seldom agree; therefore, when I stated in my concurring opinion that .25% should have been added to the 6% fixed by this Court in the majority opinion, I did so in order to allow what I thought was margin for error and to give to business, industry, and the people of Louisiana proper and adequate telephone service.
Reverting back to October 11, 1957, before the foregoing case was decided by us.
*70 Southern Bell urges that, apparently, the Commission was satisfied with the explanation offered, as nothing further occurred in the present matter until August 8, 1960, several months after the rehearing was denied in the last Southern Bell case on March 21, 1960. Southern Bell further urges:
“The sequel rate case was before the Commission on the same day, October 11, 1957, and the Commission proceeded in that case to hear again that refunds and reductions had substantially exceeded the $3,940,000.00 annual reduction ordered whether calculated on the business done during the test period on which the order had been based or calculated on actual subsequent operations. After reconsidering the needs of Southern Bell the Commission decided on October 10, 1958, that the Company was entitled to an annual Increase on its intrastate operations of $1,918,707.00 though it did not make this effective because it was dissatisfied with Southern Bell’s expansion program.
“The District Court decided that Southern Bell was entitled to that increase and your Honors found that Southern Bell was entitled to more.4 [4 Southern Bell Telephone and Telegraph Company vs. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372 (I960).] Your decision was rendered January 11, 1960, which was Two Years And Three Months After Southern Bell had explained why refunds were not made to customers of the independent carriers. The Commission then fixed new rates for Southern Bell — All Of This Was Done With Full Knowledge Of The Facts We Have Recited Here. If Southern Bell had been required to suffer a further reduction through refunds to independent connecting carriers, an additional compensating increase would have been required under the law. The new rate order did not direct such reduction nor make any compensating increase in rates.
“Then, out of a blue sky, without any other notice to Southern Bell, without any demand on Southern Bell by any independent connecting carrier, or subscriber, a divided5 [5 Commissioner Knight dissented.] Commission on August 8, 1960, Two Years And Ten Months after the hearing, directed a refund to independent companies for distribution to their customers.
“This order of August 8, 1960, did not command a refund of twenty per cent per call as contemplated when the annual reduction of $3,940,000.00 was ordered. Instead, the Commission ordered the refund of ‘20 per cent of all intrastate toll rates and charges collected by independent connecting companies for 'the use of Southern Bell exchange and toll line equipment in handling messages originating in connecting company exchanges, all as determined pursuant to the terms of applicable “Connecting Company Traffic Agreements”, such refunds to be made for the period during which Commission order number 6993 as amended by Commission order number 6999 remained in effect, namely, from September 1, 1956, to May 5, 1960, and all in accordance with said Commission orders.’ (Emphasis ours.)”

Southern Bell has, in fact, made annual reductions totalling a sum exceeding $3,940,000. This is conceded in the majority opinion herein.

It is my further view that the terms of the directive of August 8, 1960 (Order No. 8190) are clearly different from those of the rate reduction order of June 30, 1956 (Order No. 6993). My interpretation of the August 8, 1960 order is that it is not an implementation of the original rate reduction order of 1956, but that the Commission is now seeking to impose a new and an additional reduction, even though no at *71 tempt has been made by the Commission to justify a greater reduction than that already imposed upon Southern Bell and with which it has complied.
Depriving Southern Bell of the funds involved herein might well result in being a factor toward retarding the expansion of telephone service to business, industry, and homes. I have, as heretofore shown, placed myself of record as being in favor of such expansion, as has the majority opinion in the last Southern Bell case.
In conclusion, I would like to quote from the opinion of the trial judge; he said that one of Southern Bell’s contentions “is that it was ordered to reduce its annual gross intrastate revenues in the amount of $3,940,-000; that the evidence shows the annual reduction exceeded that amount; and that the commission is without authority to order any further reduction. The commission has not made any satisfactory answer to this contention. In my opinion it has merit.” (Emphasis mine.)
I agree with the conclusion of the trial judge, and for this and other reasons heretofore set forth, I respectfully dissent.